*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re STANEK, Minor.

UNPUBLISHED
October 1, 2019

No. 347595
Macomb Circuit Court
Family Division
LC No. 2017-000427-NA

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

In this termination of parental rights case, respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, MS, pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood that child will be harmed if returned to parent). For the reasons provided below, we affirm.

## I. BASIC FACTS

This case arose after a complaint was received by Child Protective Services ("CPS") regarding the welfare of MS because she had tested positive for opiates and marijuana when she was born. MS's mother admitted to using Xanax and marijuana while pregnant. A petition for temporary custody of MS was authorized, and MS was placed in foster care with her maternal aunt and uncle. After signing an affidavit of parentage, respondent entered into a parent-agency agreement ("PAA") in February 2018. Over the course of approximately one year, respondent failed to adhere to the PAA, and was repeatedly incarcerated, primarily for probation violations.

In November 2018, the Department of Health and Human Services ("DHHS") filed a supplemental petition for permanent custody of MS. It was alleged that respondent failed to attend parenting classes, random drug screenings, or individual counseling; failed to complete a psychological evaluation; and did not consistently attend parenting time with MS in the previous reporting period. The supplemental petition also alleged that respondent was recently arrested and incarcerated. DHHS stated that respondent was "subject to a Parent Agency Agreement for more than 182 days and [had] not demonstrated a benefit to any services provided," and asserted that respondent would not be able to establish a safe and stable home environment for MS in a reasonable amount of time. The trial court found that statutory grounds for termination under

MCL 712A.19b(3)(g) and (j) had been proven by clear and convincing evidence and that termination was in the best interests of the child.

## II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). And once a statutory ground for termination of parental rights has been established, the trial court must order the termination of parental rights if the trial court finds by a preponderance of the evidence that termination of parental rights is in the children's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

### A. ADEQUATE REUNIFICATION SERVICES

Respondent first argues that reversal is required because he was not provided with adequate reunification services. However, respondent did not raise any objections or otherwise indicate to the trial court that the services provided to him were inadequate; accordingly, the issue is not preserved, see *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), and our review is for plain error affecting substantial rights, *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

"Generally, when a child is removed from the parents' custody, the DHHS is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "While the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Upon review of the record, there is no indication that respondent's incarceration prevented him from access to adequate reunification services. Rather, the record shows that respondent was not incarcerated for a five-month period that lasted from June 14, 2018, to November 13, 2018. Thus, respondent was in jail for approximately six months during the child protective proceedings. There is no evidence that services were not provided to respondent while he was in jail, and it is unclear whether respondent was unable to access the services that he was required to utilize in accordance with the PAA while he was in jail, or whether he merely failed to seek them out and participate in them.

There is no dispute that DHHS made every attempt to provide him with services when he was not in jail. The fact that respondent was repeatedly incarcerated because of his failure to follow probation guidelines is not DHHS's fault and was not a result of DHHS's failure to provide him with services. Moreover, even if DHHS plainly erred by failing to provide services to respondent while he was in jail, the record clearly indicates that respondent exhibited a lack of engagement in services during the five-month period during which he was not incarcerated. Thus, there is nothing to suggest that if respondent had been provided other services while in

prison that he would have availed himself of them and benefited from them. He therefore cannot show the requisite prejudice due to any lack of services which might have existed while he was in prison.

## B. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the trial court erred by terminating his parental rights under MCL 712A.19b(3)(g) and (j). We disagree. This Court reviews for clear error a trial court's factual determination that statutory grounds exist for termination. *In re VanDalen*, 293 Mich App at 139. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court first found that termination of respondent's parental rights to the minor children was proper under MCL 712A.19b(3)(g), which states in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

There was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g). Respondent was frequently in and out of jail, had persistent substance abuse issues, and failed to provide proof that he had the means to provide proper care or custody of MS. When the statutory bases and best-interest hearing took place, respondent was in jail for a probation violation, and it was unclear when he would be released. Further, although respondent contends that he was employed before his parental rights were terminated, he never provided proof that he had been employed, and the record indicates that respondent failed to find gainful employment. Respondent also contends that he provided proof of housing and that he planned to live with MS at his mother's house. However, at the time of the statutory bases and

---

[1] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the previous version of the statute, a court could terminate parental rights if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child . . . ." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). MS was brought into petitioner's temporary custody before the new version of MCL 712A.19b(3)(g) was enacted, but the trial court relied on the newly amended version of the statute when determining whether statutory grounds existed to support the termination of respondent's parental rights.

best-interest hearing, respondent provided no proof that his mother was willing to allow respondent and MS to live with her, or that a recent home visit had been performed to determine whether the home was suitable for children.

Additionally, it must be noted that MS came into petitioner's custody because she tested positive for opiates and marijuana at birth. Although respondent was not responsible for the fact that MS had drugs in her system at birth, he nonetheless was required by the PAA to manage his own substance abuse issues. Specifically, the PAA required respondent to participate in substance abuse treatment and appear for random drug screenings. However, respondent never participated in substance abuse treatment and only appeared for two random drug screenings between the entry of the dispositional order on February 28, 2018, and the date of the statutory bases and best-interest hearing, which took place on January 10, 2019. At each of the drug screenings, respondent tested positive for drugs. On the first occasion, respondent tested positive for cocaine, and on the second occasion, he tested positive for cocaine and fentanyl. Overall, nothing in the record indicates that respondent will be able to provide proper care and custody of MS in a reasonable amount of time, and MS should not be required to wait until respondent becomes a stable and responsible parent. See *In re Terry*, 240 Mich App 14, 23; 610 NW2d 563 (2000) (holding that delaying termination of the respondent's parental rights to allow the respondent more time to learn basic parenting skills would be detrimental to the children). Based on these facts, we conclude that the trial court did not clearly err when it found that a statutory ground existed to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(g).[2]

## C. BEST INTERESTS

Respondent next argues that the trial court clearly erred in finding that termination of his parental rights was in the children's best interests. We disagree. "We review for clear error the trial court's determinations regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

" 'If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012), quoting MCL 712A.19b(5). The determination of a child's best interests is made on the basis of the preponderance of the evidence standard. *In re Moss*, 301 Mich App at 89.

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors . . . ." *In re White*, 303 Mich App at 713. Such factors can include whether the children were doing well in placement outside of respondent's

---

[2] Because we have concluded that at least one statutory ground has been proven by clear and convincing evidence, we need not consider whether the other statutory ground relied on by the trial court, MCL 712A.19b(3)(j), also has been proven by clear and convincing evidence. See *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

home, *id.* at 714, and how a child's current home compares with the parent's home, *In re Olive/Metts*, 297 Mich App at 41-42. While MS's placement was with relatives, the court found nevertheless that termination was in the best interests of the child. The record shows that MS had thrived in the placement with her maternal aunt and uncle since she began residing with them. The trial court found that the home provides the child with safety and stability, and that she receives "great care." The court also noted that there is no bond between the child and respondent, but that one does exist with the maternal aunt and uncle and that they are essentially the only parents she has ever known. Respondent's visitations have been minimal, making him, for all intents and purposes, uninvolved in MS's life. Thus, these factors weighed in favor of termination being in the child's best interests.

The court may also consider the length of time the children were in care, compliance with the DHHS case service plan, and the likelihood that the children could be returned to the parent's home within the foreseeable future. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), citing *In re Frey,* 297 Mich App at 248-249. A court may also consider a parent's parenting skills, and the children's need for permanency, stability, and finality. *In re Olive/Metts*, 297 Mich App at 41-42. At the time of the termination hearing, MS had spent nearly her entire life in foster care. During the pendency of this case, respondent was in and out of jail, tested positive for drugs on more than one occasion, and made no effort to adhere to the PAA, whether in or out of jail. Moreover, respondent never contended, until this appeal, that he did not receive adequate services while in jail, and never requested parenting time while in jail. Respondent did not make the effort to convince the trial court that he could provide stability, safety, and permanence to MS and while in jail never requested parenting time or notified the court of the alleged lack of services. Respondent never provided proof of employment, and the only family and housing support respondent had was from his mother, who he planned to live with after being released from jail, yet he provided no proof his mother was willing to house him. Respondent's mother had little contact with MS. MS's foster care worker testified that respondent's mother "went to one [parenting time] visit and then no longer contacted about visits." Respondent's mother made no further effort to have contact with respondent or MS. The court addressed the child's need for permanency, finality, and stability following a life in placement and noted that the maternal aunt and uncle wanted to adopt her. Based on a review of the entire record in this case, we cannot conclude that the trial court clearly erred in finding by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel